# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
)
**ALAN R. QUAGLIERI,**                                      )
                                                           )
        **Plaintiff,**                                  )
                                                           )
        **v.**                                         )
                                                           )
**PAUL STEEVES, individually and in his**                  )
**capacity as Plumbing Inspector for the**                 )
**Town of Norfolk, Massachusetts,**                        )     **Civil Action No. 11-10377-DJC**
**JERRY SMOLINSKY individually**                           )
**and as the Assistant Plumbing Inspector for**            )
**the Town of Norfolk, Massachusetts,**                    )
**ROBERT BULLOCK, individually**                           )
**and as the Building Commissioner for**                   )
**the Town of Norfolk, Massachusetts,**                    )
**and the TOWN OF NORFOLK, Norfolk**                       )
**County, Massachusetts,**                                 )
                                                           )
        **Defendants.**                                 )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                             March 26, 2013

## I.    Introduction

Plaintiff Alan R. Quaglieri ("Quaglieri") brings this lawsuit against Defendants Paul Steeves, Jerry Smolinsky and Robert Bullock in their individual and official capacities, and the Town of Norfolk, arising from an allegedly retaliatory plumbing code enforcement action that the Defendants took in response to Quaglieri's complaints about their conduct on other projects. Quaglieri asserts claims under 42 U.S.C. § 1983 ("Count I") and the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12, § 11I ("Count II") and alleges interference with contractual and economic relations ("Count III") and conspiracy ("Count IV").  D. 1 ¶¶ 34-37.  The Defendants

have moved for summary judgment on all counts.  D. 46; D. 53.  For the reasons stated below, the Defendants' motions for summary judgment on all counts are GRANTED.

## II.        Standard of Review and Burden of Proof

The Court grants a moving party's motion for summary judgment when there is no genuine dispute of material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party," Vélez–Rivera v. Agosto–Alicea, 437 F.3d 145, 150 (1st Cir. 2006) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)) (internal quotation marks omitted), and a fact is material if it is "one that might affect the outcome of the suit under the governing law." Id. (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)) (internal quotation marks omitted).  When the party opposing summary judgment bears the burden of proof that party must "reliably demonstrate that specific facts sufficient to create an authentic dispute exist." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-26 (1986).  Although the Court "must scrutinize the record in the light most favorable to the summary judgment [opponent] and draw all reasonable inferences therefrom to that party's behoof," Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005), the Court affords no weight to "conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001).

III.    **Factual Background**

The Court recites the following facts from the parties' statements of material facts, D. 48, D. 58 Exh. 1, D. 58 Exh. 2 and D. 60, which are undisputed except where noted.[1]

A.    <u>**The Parties and the Rocco Plaza Development**</u>

Quaglieri is a licensed builder and developer of residential and commercial properties in Massachusetts.  ¶ 2.  Quaglieri is also the manager of Rocco Plaza, LLC, a Massachusetts limited liability company that he formed in June 2008.  ¶¶ 7-9.  Quaglieri and his wife are the sole members of Rocco Plaza, LLC.  Quaglieri Dep., D. 48 Exh. L at 68-69.  Quaglieri is also the president, treasurer, secretary, and director of B.I.G. Excavation Corp. ("B.I.G."), which he formed in May 2000.  ¶¶ 29, 31.  The individual Defendants, Plumbing Inspector Paul Steeves ("Steeves"), Assistant Plumbing Inspector Jerry Smolinsky ("Smolinsky") and Building Commissioner Robert Bullock ("Bullock") (collectively "Individual Defendants") are employed by Defendant Town of Norfolk, Massachusetts ("Town").  ¶¶ 3-5.

Rocco Plaza, LLC purchased a property ("Rocco Plaza") located at 17 Pine Street in Norfolk on June 25, 2008.  ¶¶ 10-11, 24.  On March 23, 2010, Rocco Plaza, LLC entered into a lease with J.K. Liang, Inc. ("Liang") to open a Chinese food take-out restaurant at Rocco Plaza.  ¶¶ 25-26.  Later that year, on July 29, 2010, Rocco Plaza, LLC entered into a lease with Five Stern Enterprises 2, LLC d/b/a Pizza Tyme ("Pizza Tyme") to allow Pizza Tyme to open a restaurant at Rocco Plaza.  ¶ 28.

During the construction of Rocco Plaza, Quaglieri's company, B.I.G., installed a "grease trap" on the property's on-site septic system in 2010.[2]  ¶ 32.  The "grease trap" was installed into

---

[1]  Except where noted, paragraph references correspond to the numbered paragraphs found in D. 48 (Statement of Material Facts of Defendants Steeves, Smolinsky, and Bullock).

the ground and its components and piping were covered with asphalt.  ¶ 42.  Quaglieri claims that this "grease trap" was approved by the Town and certified for use.  Pl. Statement of Facts (hereinafter "PSOF"), D. 58 ¶  2.

In the Fall of 2010, Pizza Tyme hired Steeves's brother-in-law Christopher Cunniff ("Cunniff") to perform plumbing work in its unit.  ¶¶ 44-45.  Cunniff obtained a plumbing permit from the Town to begin working on the unit and asked Steeves to assist with the plumbing work.  ¶¶ 44-45.  Steeves testified that he spent two days working at the Pizza Tyme unit installing plumbing waste lines.  ¶¶ 47-48.  Following the completion of Cunniff and Steeves's work at Pizza Tyme, Smolinsky inspected the work.  ¶ 53.  Quaglieri surveyed the completed work on November 11, 2010 and found that the waste lines were "pitched incorrectly" and "did not have proper clean out traps" as mandated by the state plumbing code.  ¶ 55; D. 48, Exh. Q at 7.  On November 22, 2010, Quaglieri contacted Bullock to complain about Cunniff and Steeves's work.  ¶¶ 56-57.

On December 7, 2010, the gas lines at Rocco Plaza, purportedly worked on by Cunniff and Steeves, allegedly leaked.  PSOF, D. 58 ¶ 4.  The repair on the gas lines at Rocco Plaza was inspected by Smolinsky.  PSOF, D. 58 ¶ 5.  On December 8, 2010, Bullock informed Quaglieri that Bullock had instructed Steeves and Smolinsky to meet Quaglieri at Rocco Plaza to try to address Quaglieri's concerns.  ¶ 58.  At this meeting held two days later on December 10, 2010, Quaglieri alleges that he reiterated his concerns about Cunniff and Steeves's work in the Pizza Tyme unit.  ¶ 59.  At the meeting, Quaglieri alleges that Steeves walked towards him, raised his

---

[2] Whether the installed equipment was actually a "grease trap" or a "grease interceptor" is debated by the parties, ¶¶ 35-38, but this difference is immaterial to this Court's resolution of the motions for summary judgment.  Following the convention used in all parties' motion papers, the Court refers to the equipment as a "grease trap."

index finger, and stated:  "You had better back off or bad things are going to happen to you."

¶ 60.   Another meeting took place on December 14, 2010 between Quaglieri, Quaglieri's property manager, Bullock and "various town officials."   ¶¶ 64-65.   At this second meeting, Quaglieri alleges that he reiterated his continued concerns about Cunniff and Steeves.   ¶ 65.

### B.      The Alleged Plumbing Code Violation

On December 21, 2010, Steeves acting in his capacity as Town Plumbing Inspector sent Quaglieri a certified letter stating that an "outdoor grease interceptor" located at Rocco Plaza was not in compliance with the state plumbing code. ¶¶ 69-71.   Steeves's letter stated that Quaglieri had thirty days to correct the violations and to have the repairs inspected, ¶¶ 69, 71, and that Quaglieri had "the right to appeal this decision to the Board of State Examiners of Plumbers & Gas Fitters."   Steeves Enforcement Letter, D. 48 Exh. O at 2.   The letter stated that pursuant to the plumbing code, the subject "grease interceptor" needed to have a chamber vent.   ¶¶ 72, 75; D. 48, Exh. O at 1.

Following Quaglieri's receipt of Steeves's Enforcement Letter, Quaglieri had a meeting at the Town offices on January 18, 2011.   ¶ 67. Quaglieri alleges that at the meeting Steeves threatened him by saying: "Mr. Quaglieri, if you keep protesting this way you won't like what will happen when I take you to the state plumbing board."   ¶ 68; Ver. Compl., D. 1 ¶ 24. Quaglieri sent a letter to Steeves on January 19, 2011, questioning the "propriety and correctness" of Steeves's interpretation of the plumbing code.   ¶¶ 70, 81; D. 1 ¶ 25.

On January 21, 2011, a Town Selectman, John Lehan, sent Quaglieri an e-mail, stating, "Bob [Bullock] will be following up with you on next steps and until such time you will have an extension on the letter."  PSOF, D. 58 ¶ 18; D. 58 Exh. M.   On January 23, 2011, Quaglieri filed a written complaint with the State Ethics Commission regarding Steeves, Smolinsky and

Bullock. ¶ 82. Steeves wrote a letter to Quaglieri, dated January 24, 2011, which stated that the 30-day period of the first (December 21, 2010) letter had lapsed and, accordingly, Quaglieri had 24 hours to begin the necessary repairs. PSOF, D. 58 ¶ 20; D. 58, Exh. O at 1. Quaglieri contends that Steeves's letter dated January 24, 2011 was actually sent by Bullock to Quaglieri several days later, with a postmark date of January 31, 2011. PSOF, D. 58 ¶ 21; D. 58 Exh. P. On February 3, 2011, Quaglieri filed an appeal of Steeves's December 21, 2010 Enforcement Letter with the Board of State Examiners of Plumbers & Gas Fitters ("Plumbing Board"). ¶ 80.

On April 20, 2011, the Plumbing Board dismissed Quaglieri's February 3, 2011 appeal finding that it was filed outside the ten-day appeal period. ¶ 83; D. 48, Exh. X at 3-4. Quaglieri's subsequent appeal of that ruling to the Norfolk Superior Court was dismissed on the same grounds. Sup. Ct. Mem. of Dec., D. 59 Exh. 2 at 6.

## IV.   Procedural History

On March 4, 2011, Quaglieri filed the instant complaint against the Defendants. D. 1. On March 6, 2012, Quaglieri moved to amend his complaint to withdraw claims against the Town without prejudice to comply with the presentment requirements of Mass. Gen. L. c. 258, § 4.[3] D. 45. On April 10, 2012, this Court denied Quaglieri's motion to amend his complaint. Docket Entry, Apr. 10, 2012. The Defendants have now moved for summary judgment on all counts. D. 46; D. 53. The Court held a hearing on the motions on October 10, 2012 and took the matter under advisement. D. 67.

---

[3] The relevant portion of Mass. Gen. L. c. 258, § 4 states:

A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section.

**V.      Discussion**

      **A.      Quaglieri Lacks Standing to Bring Claims on Behalf of Rocco Plaza, LLC**
         **and, Therefore, the Court Only Considers Quaglieri's Individual Claims**

As an initial matter, the Defendants challenge Quaglieri's standing to bring his claims in this lawsuit.  Def. Mem., D. 47 at 14; Def. Mem., D. 54 at 16-17.  The Defendants assert that Quaglieri lacks standing to bring these claims because the subject property, Rocco Plaza, is owned by Rocco Plaza, LLC, rather than Quaglieri.  Def. Mem., D. 47 at 14; Def. Mem., D. 54 at 16.  "[W]hen the defendants' alleged wrong violates a right belonging to a corporation, or causes an injury to a corporation, a shareholder cannot, in his own name, bring an action to enforce those rights or redress those injuries."  Laverty v. Massad, 661 F. Supp. 2d 55, 62 (D. Mass. 2009) (citing Diva's Inc. v. City of Bangor, 411 F.3d 30, 42 (1st Cir. 2005)).  "This standing rule applies even when there is only one shareholder in a corporation [and] applies to actions to redress injuries to a corporation under § 1983."  Diva's Inc., 411 F. 3d at 42.  It follows that "a member of an LLC cannot bring an action in his own name to enforce the rights or redress the injuries of the LLC."  Laverty, 661 F. Supp. at 62; see also Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P. C., 405 Mass. 506, 514  (1989) (affirming under Massachusetts state law that the co-owner of a closely held corporation "lacked standing to . . . recover for losses that the judge found were sustained by [the corporation], and the plaintiff proved no other personal losses").  Accordingly, Quaglieri does not have standing to bring an action in his own name to enforce the rights or redress the injuries of Rocco Plaza, LLC.  However, Quaglieri is not clear whether he asserts claims on behalf of his corporate entities, or by himself individually.  To the extent that these allegations may overlap, the Court will consider the claims only to the extent that the injuries alleged affected Quaglieri, individually.  See Laverty, 661 F. Supp. 2d at 61-62

(considering claims only as applying to the plaintiff where it was unclear whether the plaintiff also sought "to assert claims on behalf of other entities").

### B.     The Court Grants Summary Judgment For Defendants on Count I

Quaglieri in his complaint alleges that Defendants have violated 42 U.S.C. § 1983.  D. 1 ¶ 34.  "Section 1983 is not, by itself, a source of any substantive rights, rather it creates a cause of action to remedy certain deprivations of federal rights."  Baker v. Sweeney, 526 F. Supp. 2d 126, 132 (D. Mass. 2007) (citing Brown v. McCollan, 443 U.S. 137, 144 n.3 (1979)). "Accordingly, an underlying constitutional or statutory violation is a predicate to liability under section 1983."  Henley v. Brown, 686 F. 3d 634, 640 (8th Cir. 2012).  Quaglieri did not identify any violated federal rights in his complaint, D. 1 ¶¶ 30, 34, but clarified in his opposition to summary judgment, D. 58 at 10-15, that he is alleging that the Defendants' plumbing code enforcement impinged on his constitutional rights to procedural due process, substantive due process and equal protection.  Pl. Opp., D. 58 at 9; D. 1 ¶ 34; see Individual Defendants' reply, D. 59 at 2-5.  The Court considers Quaglieri's claims as to these constitutional rights.

To prevail on a claim brought under § 1983, a plaintiff must show both:  "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States."  Chongris v. Bd. of Appeals of the Town of Andover, 811 F.2d 36, 40 (1st Cir. 1987).  Neither party disputes that the first element is satisfied in this case.  Pl. Opp., D. 58 at 11; Def. Mem., D. 47 at 7.  The Court now considers whether the second prong may be met in this case, or if instead the Defendants are entitled to summary judgment on this claim.[4]

---

[4] Defendants Steeves, Smolinsky and Bullock, were sued both in their individual and official capacities.  Ver. Compl., D. 1 ¶¶ 3-5.  Although the common law doctrine of qualified immunity may permit dismissal on the claims filed against the Defendants in their official capacities, the

*1.      Procedural Due Process*

Quaglieri alleges that Bullock's delayed mailing of Steeves's January 24, 2011 letter, D. 58 ¶ 21, the Plumbing Board's disregard of the Selectman's January 21, 2011 "extension" e-mail when reviewing Steeves's December 21, 2010 enforcement letter, D. 48 ¶ 83; D. 58 ¶ 18, and the state court's subsequent dismissal of the State Plumbing Board decision on timeliness grounds, D. 59 Exh. 2, together amounted to a denial of Quaglieri's procedural due process rights.  Pl. Opp., D. 58 at 12.

To sustain a procedural due process claim under § 1983, a plaintiff must allege first, that the plaintiff has a property interest as defined by state law and second, that the defendants, acting under color of state law, deprived him of that property interest without constitutionally adequate process.  San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 478 (1st Cir. 2012) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982)).  To sustain such a claim in this context, there must be some "procedural irregularity racial animus, or the like" to "rise to the level of a due process violation."  Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 831-33 (1st Cir. 1982) (noting that "[v]irtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to a federal court on the theory that the erroneous application of state law amounted to a taking of property without due process.  Neither Congress nor the courts have, to date, indicated that section 1983 should have such a reach").  Moreover, the First Circuit has found that even a "bad faith refusal to follow state law in such local administrative matters simply does not amount to a deprivation of due process where the

---

Court considers Quaglieri's arguments on the merits and resolves it on those grounds without deciding the qualified immunity issue.

state courts are available to correct the error."  <u>Chiplin Enters., Inc. v. City of Lebanon</u>, 712 F.2d 1524, 1528 (1st Cir. 1983); <u>see</u> <u>Creative Env'ts</u>, 680 F.2d at 832.

Even assuming Quaglieri individually had a protectable property interest, there is still no fundamental "procedural irregularity" that deprived Quaglieri of that interest without adequate process.  <u>Creative Env'ts</u>, 680 F.2d at 833.  In this case, Quaglieri received adequate process through his appeal of Steeves's December 21, 2010 Enforcement Letter to the Plumbing Board and the subsequent appeal of the Plumbing Board's decision filed in Norfolk Superior Court.  D. 48 Exh. X; D. 59 Exh. 2.

On March 16, 2012 the Norfolk Superior Court granted a motion to dismiss Quaglieri's appeal of the Plumbing Board's decision on statutory timeliness grounds.  D. 59 Exh. 2 at 6.  The court found that pursuant to Massachusetts law, the statutory appeal period for plumbing code violations is ten days.  Mass. Gen. L. c. 142, § 13 (providing that "[a]ny party aggrieved by a ruling interpreting the rules and regulations . . . may appeal to the examiners in writing within ten days after such ruling"); D. 59 Exh. 2 at 3-4.  The court found that Quaglieri had missed the statutory appeal period by forty-one days.  D. 59 Exh. 2 at 4.  Quaglieri, however, asserted, and continues to assert, that an email he received from a Selectman twenty-one days after the appeal period under Mass. G. L. c. 142, § 13 had elapsed somehow could have retroactively exempted him from the deadline for a timely appeal.  D. 59 Exh. 2 at 6; Pl. Opp., D. 58 at 12; Selectman e-mail dated January 21, 2011, D. 58 Exh. M.  The state court rejected this argument and held that Quaglieri was not entitled to a ruling on the merits.  D. 59 Exh. 2 at 6; <u>see</u> <u>Mass. Respiratory Hosp. v. Dep't of Pub. Welfare</u>, 414 Mass. 330, 337 (1993) (explaining that "[w]hen a party fails properly to proceed through an agency's lawfully established administrative process, that party normally is not entitled to a judicial decision on the merits").

"Where state procedures—though arguably imperfect—provide a suitable form of predeprivation hearing coupled with the availability of meaningful judicial review, the fourteenth amendment guarantee of procedural due process is not embarrassed." Chongris, 811 F. 2d at 40. Quaglieri had adequate procedures to appeal Steeves's December 21, 2010 enforcement letter before the ten-day period for appeal and the thirty-day period for required repairs had elapsed, but failed to avail himself of those procedures in a timely manner. See Mass. Gen. L. c. 142, § 13. The fact that Quaglieri disagrees with the procedure and its outcome does not make the process "irregular." See Creative Env'ts, 680 F. 2d at 833. The Court finds no genuine dispute of material fact as to this issue and, on the undisputed facts, Quaglieri's claim that the Defendants' conduct deprived him of his constitutional right to procedural due process fails.

2.    *Substantive Due Process*

Quaglieri alleges that the Defendants issued the notice of a plumbing code violation in retaliation of Quaglieri's complaints over the Defendants' workmanship and, therefore, violated Quaglieri's substantive due process rights. Pl. Opp., D. 58 at 13-14. "The substantive component of due process protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Souza v. Pina, 53 F.3d 423, 425 (1st Cir. 1995) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). "Thus, unlike a procedural due process claim, this challenge requires [the Court] to assess the constitutionality of the [alleged] deprivation itself." González-Fuentes v. Molina, 607 F.3d 864, 880 (1st Cir. 2010). "[T]he threshold question is 'whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Id. (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

A "hallmark" of an action that shocks the contemporary conscience "is an extreme lack of proportionality, as the test is primarily concerned with 'violations of personal rights . . . so

severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience.'" Id. at 881 (quoting Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002)) (omissions in original).

The First Circuit has adopted an extremely high threshold for § 1983 claims alleging violations of substantive due process. See Collins v. Nuzzo, 244 F.3d 246, 251 (1st Cir. 2001) (holding that a licensing board's denial to issue a license for dealing in used automobiles fell far short of the "kind of conscience-shocking abuse of governmental power required for showing a substantive due process violation"); Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992) (noting that "the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes. In the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief [although there is] federal relief in truly horrendous situations"). Such a high threshold guards against "insinuat[ing] the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals." Collins, 244 F.3d at 251 (alteration in original) (quoting Nestor Colon, 964 F.2d at 45).

For Quaglieri to establish a substantive due process claim under § 1983, he would have to show that he was deprived of an established life, liberty, or property interest, and that such deprivation occurred through "governmental action that shocks the conscience." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008). Even assuming that Quaglieri individually has a protectable property interest here, there is no genuine dispute of material fact and the undisputed facts show that the Defendants' actions fail to rise to a substantive due process violation.

Quaglieri argues that the animus exhibited by the Defendants and the retribution against him passes the First Circuit's "shocks the conscience" standard.  Pl. Opp., D. 58 at 12-13. However, the conduct that Quaglieri describes is similar to conduct that the First Circuit has declined to find actionable in the past.  See Clark, 514 F.3d at 112-13 (holding that city officials' alleged pattern of arbitrary and unreasonable denials of the plaintiff's new land development plan failed to satisfy the "shocks the conscience" standard); Collins, 244 F.3d at 251 (finding that a contentious relationship between the plaintiff and board members that led to a denial of the developer's license based on animus did not "shock the conscience"); Licari v. Ferruzzi, 22 F.3d 344, 349-50 (1st Cir. 1994) (holding that a city planning board's revocation of permits, delay in granting new permits, and illegitimate enforcement actions allegedly motivated by hostility towards the developer did not "shock the conscience"); Amsden v. Moran, 904 F.2d 748, 757 (1st Cir. 1990) (finding that a Chairman's denial of a license, allegedly based on animus towards the surveyor, was not so "shocking or violative of universal standards of decency," id. at 754, and, therefore, did not satisfy the "shocks the conscience standard").  The Court finds no genuine dispute of material fact and, on the undisputed facts here, Quaglieri's claim that the Defendants' conduct deprived Quaglieri of his substantive due process rights also fails.

### 3.    Equal Protection

Quaglieri alleges that the Defendants violated his right to equal protection by singling out the Rocco Plaza property to require installation of a chamber-vented "grease trap," a requirement that Quaglieri insists was not imposed on other commercial establishments in Norfolk.  Pl. Opp., D. 58 at 14.  Quaglieri frames his claim as a violation of his equal protection rights under a "class of one" analysis.  Pl. Opp., D. 58 at 14-15.  To prevail on a "class of one" equal protection argument, a plaintiff must prove "1) that [the plaintiff] was intentionally treated differently 2)

from others similarly situated 3) without a rational basis for that differences in treatment <u>and</u> (4) that the difference in treatment was due to malicious or bad faith intent on the part of the defendants to injure [the plaintiff]."   <u>Walsh v. Town of Lakeville</u>, 431 F. Supp. 2d 134, 145 (D. Mass. 2006) (emphasis in original).   Quaglieri's claim must fail where there is no genuine dispute of material fact and on the undisputed facts Quaglieri cannot show that he was treated differently from others "similarly situated."

"To determine whether two or more entities are 'similarly situated,' [the Court must consider] 'whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. . . . Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples.'"   <u>SBT Holdings, LLC v. Town of Westminster</u>, 547 F.3d 28, 34 (1st Cir. 2008) (quoting <u>Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.</u>, 246 F.3d 1, 8 (1st Cir. 2001)).   In this case, Quaglieri would have the burden of production and persuasion at trial to prove that other "similarly situated" commercial establishments in Norfolk were not obligated to install the necessary grease traps.  <u>See</u> <u>Barrington</u>, 246 F.3d at 8.

In support of the "similarly situated" prong of his equal protection claim, Quaglieri points to a discovery request that he made of the Defendants on January 2, 2012 during the discovery phase of this litigation requesting documents related to "any inspections" of a particular Town Selectman.  D. 58 at 14-15, PSOF ¶ 25; D. 58 Exh. Q at 5-6.  The Defendants objected to the written discovery because Quaglieri failed to provide the Defendants adequate notice of production as required by Fed. R. Civ. P. 30 and 34.  E-mail Correspondence, D. 58 Exh. R.  Quaglieri asks the Court to infer that any substantive response would have supported his claim.  Pl. Opp., D. 58 at 14-15 (arguing that "the inferences to be draw [sic] from the non-response

[support a claim that] the Plaintiff has been singled out for treatment different than the other commercial establishments in town"). Quaglieri also cites to Steeves's testimony during his deposition, when he testified that he knew of three establishments in Norfolk that had exterior chamber-vented grease interceptors. Steeves Dep., D. 58 Exh. I at 207-08.

As a first point, Quaglieri must individually assert that he was treated differently than others under the "similarly situated" prong; he cannot assert a claim on behalf of his company that owned Rocco Plaza. To the extent that these arguments support Quaglieri's own claim as to the "similarly situated" prong, they still fail. Although at the summary judgment stage we must draw all reasonable inferences for the nonmoving party, Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009), "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Accordingly, the Court can only consider the evidence in the record to determine whether the "similarly situated" element was met and the Defendants' lack of response to a discovery request does not create a substantive record. Otherwise, Quaglieri points only to Steeve's deposition testimony, as described above. D. 58 at 14-15. Although there may be other commercial establishments in Norfolk that do not have chamber-vented grease traps, Steeves's statement that such commercial establishments exist is insufficient to create a genuine dispute of material fact. There is nothing in the record—disputed or otherwise—that other commercial establishments that were not required to install chamber-vented grease traps were similar in "all relevant aspects" to the property here, or that Quaglieri individually was treated differently from persons situated similarly "in all relevant aspects." Smith v. City of Boston, No. 03-10062-DPW, 2004 WL 1572626, at *4 (D. Mass. 2004) (stating that "[a plaintiff] claiming an equal protection violation must first 'identify and relate specific instances where persons situated similarly in all

15

relevant aspects were treated differently, instances which have the capacity to demonstrate that [the plaintiff was] singled . . . out for unlawful oppression'" (quoting <u>Dartmouth Review v. Dartmouth Coll.</u>, 889 F.2d 13, 19 (1st Cir. 1989)) (internal quotation marks omitted)).  As such, the record after discovery is insufficient to support Quaglieri's claim.  <u>See</u> <u>id.</u> (granting defendants' motion for summary judgment where the plaintiff "fail[ed] to buttress . . . conclusory statements with any specific evidence [and] present[ed] no facts showing that other no-heat complaints were treated any differently").  The Defendants are entitled to summary judgment on Count I as a matter of law.

In connection to the resolution of Quaglieri's § 1988 claim, the Defendants seek attorney's fees under 42 U.S.C. § 1988(b) which provides that "the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs."  The Court "may award attorney's fees to a prevailing defendant upon a finding that plaintiff's action was 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'"  <u>Andrade v. Jamestown Housing Auth.</u>, 82 F.3d 1179, 1192 (1st Cir. 1996) (quoting <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421 (1978)).  That is, "[a]n award of attorney's fees to a prevailing defendant in a civil rights action, however, should be reserved for only those truly frivolous or patently unfounded claims."  <u>Champlin's Realty Assocs. v. Carcieri</u>, 2005 WL 4927835, at *2 (D.R.I. Nov. 30, 2005).   "In determining whether this standard has been met, the court must assess the claim at the time the complaint was filed, and must avoid the post-hoc reasoning that, because the plaintiff did not ultimately prevail, the claim must have been frivolous, unreasonable or without foundation."  <u>Tang v. State of Rhode Island Dept. of Elderly Affairs</u>, 163 F.3d 7, 13 (1st Cir. 1998) (noting that "decisions to grant defendants their fees [under 42 U.S.C. § 1988] are, and should be, rare"); <u>see Torres-Santiago v. Municipality of</u>

Adjuntas, 693 F.3d 230, 242 (1st Cir. 2012). Through this lens, the Court does not conclude that Quaglieri's claims were so patently unfounded when filed. Although this Court ultimately determined that the Defendants were entitled to summary judgment on a full-developed record, this Court cannot say that the claims arising out of the allegedly retaliatory actions of the individual Defendants were so patently unfounded that this is the "rare" civil rights case in which the award of attorney's fees to them is warranted. Accordingly, the Court denies the Defendants' motion for attorney's fees.

**C.** **The Court Grants Summary Judgment to the Defendants on the Remaining State Law Claims (Counts II-IV)**

*1.* *The Court Retains Supplemental Jurisdiction over Counts II-IV*

Quaglieri's remaining claims all arise under Massachusetts law. In such circumstances, "the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction, but, rather, sets the stage for an exercise of the court's informed discretion." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996). In deciding whether to exercise supplemental jurisdiction in such a circumstance, the Court, "must take into account concerns of comity, judicial economy, convenience, fairness, and the like." Id. at 257. In Roche, the First Circuit, in affirming the district court's decision to hear the state law claims after the federal claim giving rise to the original jurisdiction had been dismissed, emphasized that "litigation had matured well beyond its nascent stages, discovery had closed, the summary judgment record was complete, the federal and state law claims were interconnected, and powerful interests in both judicial economy and fairness tugged in favor of retaining jurisdiction." Id.; see Walsh, 431 F. Supp. 2d at 149.

This case was filed in this Court two years ago, D. 1 at 9, fact discovery closed over a year ago, Docket Entry, May 31, 2011, and the summary judgment record is now complete. See

Roche, 81 F.3d at 257.  The remaining questions of state law "form part of the same case or controversy" as Quaglieri's federal claim and are not so novel as to warrant the added delay and cost to the parties for consideration by a Massachusetts state court.  28 U.S.C. §§ 1367(a), (c). Accordingly, the Court will address and resolve the state law claims.

### 2.    *Massachusetts Civil Rights Act, Mass. Gen. L. c. 12, § 11I (Count II)*

Quaglieri alleges that the Defendants' action in issuing a plumbing code violation in retaliation of Quaglieri's complaints over the Defendants' workmanship violated both his federal and state rights in violation of the Massachusetts Civil Rights Act, Gen. L. c. 12, § 11H, 11I (hereinafter "MCRA").[5]  Pl. Opp., D. 58 at 18-19.  To establish a claim under the MCRA, a plaintiff must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by "threats, intimidation or coercion."  Mass. Gen. L. c. 12, §§ 11H, 11I; Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 395-96 (1996)).

Quaglieri premises his MCRA claim on his constitutional rights to procedural due process, substantive due process and equal protection, and on his right secured by Massachusetts law "to use and improve his real property" that he states is protected by Mass. Const. art. I, X, and Bell v. Mazza, 394 Mass. 176, 178 (1985).  D. 58 at 18; see Swanset, 423 Mass. at 396

---

[5] Mass. Gen. L. c. 12, § 11H provides in pertinent part:  "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured."  Mass. Gen. L. c. 12, § 11I provides the private right of action to seek equitable relief and damages for violation of a right protected under § 11H.

(citing <u>Bell</u>, 394 Mass. at 178) (observing that "[w]e have recognized that an owner of real property has a constitutional right to use and improve that property, subject, of course, to limitations on development lawfully imposed by State law or by municipal regulation").  We have already determined that on this record there are no genuine disputes of material fact and on the undisputed facts Defendants are entitled to judgment that they did not interfere with Quaglieri's rights to procedural due process, substantive due process or equal protection under the federal constitution.  Quaglieri in his briefing does not explain how the Court's analysis of those issues would be any different under the "Constitution or laws . . . of the Commonwealth." D. 58 at 18-19.  Nor does Quaglieri identify how his right "to use and improve his real property" was violated.  Even had he done so, it is undisputed that it is not Quaglieri, but Rocco Plaza, LLC, that owns the property at issue in this lawsuit.  Individual Defendants' Statements of Facts, D. 48 ¶¶ 10-11, 24; Quaglieri's Reply to Statement of Facts, D. 58 ¶¶ 10-11, 24.  The Court finds that there is no genuine dispute of material fact and that based on the undisputed material facts the Defendants are entitled to summary judgment on Count II as a matter of law.[6]

### 3.   Interference with Contractual and Economic Relations (Count III)

Quaglieri has alleged that the Defendant interfered with his contractual and economic relations. D. 1 ¶ 36.  Massachusetts interprets these "substantially similar" claims as separate causes of action:  interference with contractual relations, and interference with advantageous

---

[6] As Quaglieri acknowledges, D. 58 at 20, Count II must fail against Defendant Town on the additional basis that because "[u]nlike section 1983, [i]t is now clear that under Massachusetts law, a municipality cannot be sued under the MCRA." <u>Fletcher v. Szostkiewicz</u>, 190 F. Supp. 2d 217, 230 (D. Mass. 2002) (internal quotation marks and citations omitted); <u>Howcroft v. City of Peabody</u>, 51 Mass. App. Ct. 573, 591-92 (2001) (affirming summary judgment in favor of the city on a MCRA claim, "because we conclude that a municipality is not a 'person' covered by . . . [Mass.] Gen. L. c. 12, §§ 11H, 11I").

business relations.  Cavicchi v. Koski, 67 Mass. App. Ct. 654, 657 (2006); Shafir v. Steele, 431 Mass. 365, 370 n.10 (2000).

           a)         Quaglieri's Claim For Interference With Contractual Relations
                       Fails Where There is No Evidence of a Broken Contract

Under Massachusetts law, to satisfy a claim for interference with contractual relations, a plaintiff must demonstrate that "(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; (4) the plaintiff was harmed by the defendant's actions." Cavicchi, 67 Mass. App. Ct. at 657 (quoting Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994)) (internal quotation marks omitted).  In support of his interference claim, Quaglieri asserts that he has been damaged through the "habitually late rent and other technical defaults of his lease agreements" as a result of the Defendants' actions.  Pl. Opp., D. 58 at 21; Quaglieri Dep., D. 48 Exh. L at 152.  Specifically, Quaglieri asserts that Pizza Tyme has paid rent late every month and Quaglieri further believes that Pizza Tyme may have illegally sublet its location to another business.  Quaglieri Dep., D. 48 Exh. L at 221.  But the contract leases at Rocco Plaza are between tenants and Rocco Plaza, LLC, and do not involve Quaglieri individually.  D. 48 ¶¶ 25-26, 28; D. 58 Exh. 1 ¶¶ 25-26, 28.  Even were that not so, there are no facts to suggest that Defendants "knowingly induced" the Rocco Plaza tenants to breach their leases in the manner alleged or that this alleged damage is in any way related to Defendants' actions.  Accordingly, the Court grants Defendants' motion for summary judgment on Quaglieri's claim for interference of contractual relations.

           b)         Quaglieri's Claim For Interference With Advantageous Business
                       Relations Must Fail Where Quaglieri Cannot Point to Facts to
                       Support This Claim

Under Massachusetts law, to state a claim for interference with advantageous business relations, a plaintiff must demonstrate that "(1) he had a business relationship for economic benefit with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct." Cavicchi, 67 Mass. App. Ct. at 657 (quoting Kurker v. Hill, 44 Mass. App. Ct. 184, 191 (1998)) (internal quotation mark omitted).

Quaglieri alleges that he has put his development projects in Norfolk on hold because of the "attendant uncertainty" following the Defendants' actions at his Rocco Plaza property. Pl. Opp., D. 58 at 21. For example, he implies that he neglected to pursue a Dunkin Donuts lease at his 242 Dedham Street location, because he "can't imagine what my life would be dealing with the Norfolk building department." Quaglieri Dep., D. 48 Exh. L at 107-08. Even assuming that the Defendants knew of Quaglieri's business relationships within Norfolk (where no facts are alleged to support this proposition), there are no facts to support a finding of the fourth element, namely that "the plaintiff's loss of advantage resulted directly from the Defendants' conduct." Quaglieri proffers no facts that his business relations were damaged and his own voluntary actions to place "his remaining projects on hold" does not "directly" arise from Defendants' conduct. Accordingly, the Defendants are entitled to summary judgment on Count III as a matter of law.[7]

---

[7] Count III must also fail as alleged against the Town "because under the Massachusetts Tort Claims Act, [Mass. Gen.] L. c. 258, § 10(c) . . . , municipalities are not liable for 'any claim arising out of an intentional tort, including . . . interference with advantageous relations or interference with contractual relations.'" Swanset, 423 Mass. at 397 (second omission in original) (quoting Mass. Gen. L. c. 258, § 10(c)); Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 285 (1985) (holding that "public employers retain their immunity from suits arising from intentional torts").

                *4.*       *Conspiracy (Count IV)*

Count IV, a claim for civil conspiracy based on "concerted action," requires a showing of "an underlying tortuous act in which two or more persons acted in concert and in furtherance of a common design or agreement." <u>Bartle v. Berry</u>, 80 Mass. App. Ct. 372, 383-84 (2011) (citing <u>Kurker</u>, 44 Mass. App. Ct. at 188-89). In the present case, Quaglieri concedes that "the claim for civil conspiracy is dependant [sic] on the interference claim as the underlying tort." Pl. Opp., D. 58 at 22. Because the Court grants the motion for summary judgment as to Quaglieri's interference claim, the conspiracy claim must fail for lack of an "underlying tortious act." <u>Bartle</u>, 80 Mass. App. Ct. at 384 (finding no viable conspiracy claim where the underlying tort failed for "public policy" reasons). Accordingly, the court dismisses Count IV.

**VI.**     **Conclusion**

For the foregoing reasons, the Defendants' motions for summary judgment, D. 46, D. 53, are GRANTED on all counts.

       **So Ordered.**

                                <u>/s/ Denise J. Casper</u>
                                United States District Judge